211 P.2d 399

In re HARTWIG'S ESTATE.

HARTWIG et al. v. McDERMOTT et al.

No. 7581.

Supreme Court of Idaho.

Nov. 10, 1949.

Verner R. Clements, Lewiston, for respondents.

Thomas A. Madden, Lewiston, for respondent Frank Hartwig, executor.

Ray E. Durham, Lewiston, Wynne M. Blake, Lewiston, for appellants.

PORTER, Justice.

Herman Hartwig and Bertha Hartwig were husband and wife. Ten children were born to them. All survived their father and mother. November 24, 1939, Herman Hartwig, then eighty years of age, executed his will. November 30, 1940, Bertha Hartwig died intestate. Herman Hartwig died testate April 4, 1942. His will was admitted to probate May 2, 1942, in the probate court of Lewis County. March 5, 1945, a decree was rendered and entered in that court construing the will and distributing an undivided one-twentieth interest to each of the ten Hartwig children, representing one-half of the estate. The other half, after deduction of specific bequests, was distributed to Lydia Warren, a daughter, and Frank Hartwig, a son. On appeal to the district court the decree of the probate court was reversed; and the probate court was directed, after payment of specific bequests, to distribute the entire estate to Lydia Warren and Frank Hartwig. The appeal to this court is from the judgment and decree of the district court.

The appeal involves the construction of certain provisions of said will. Paragraph 2 reads: "I give, devise and bequeath to my beloved wife Bertha Hartwig an undivided one half interest in my estate, being her community interest therein."

Paragraphs 3, 4, 5 and 6 give $1.00 each to four of the children. . Paragraphs 7, 8, 9 and 10 give $100 each to four of his sons named therein. Paragraph 11 reads: "All the rest, residue and remainder of my said estate, I give, devise and bequeath to my daughter Lydia Warren, of Emmet—, Idaho, and my son Frank Hartwig, of Klamath Falls, Oregon, to have and to hold, share and share alike."

Appellants contend the will itself discloses the testator was dealing only with his half of the community property; that he restricted the disposition of his property to his own half interest therein; that he did not anticipate the death of his wife prior to his; that, as to the half interest which he later acquired upon his wife's death, he died intestate; and that the residuary clause in the will referred only to his own half interest in the community property which would be left after payment of the specific bequests contained in paragraphs 3 to 10, inclusive.

It does not appear to be contended by appellants that the provision of paragraph 2 of the will constitutes a bequest. It is merely a recognition by the testator that under the community property law, the wife owned an undivided one-half interest in the community property.

Under the common law, personal property acquired after the making of a will, passes under the will unless a manifest intention to the contrary is disclosed by the will. After-acquired real estate, under common law, did not pass under a will. This matter is discussed in 57 Am.Jur., pp. 796–797 in pars. 1210–1211, as follows:

"It has always been agreed that, as to personal property, a will speaks as of the death of the testator; both at common law and under modern statutes personal property acquired by the testator after the execution of his will passes thereunder, unless a contrary intention clearly appears. A general residuary clause, for example, or a general disposition of 'all' my personal property' or 'all my personal estate' will operate to pass any personal property acquired by the testator after the execution of his will. Even specific bequests have sometimes been held to carry after-acquired property. Of course, the will may contain language indicating the testator's intention, which will control the result."

\* \* \* \* \* \*

"While the common law has always regarded wills of personal property as speaking as of the time of the death of the testator, and as passing after-acquired property unless a contrary intent appears, it was long the established rule, both in England and in this country, that a testamentary disposition of real property spoke as of the time of the execution of the will and not as of the time of the death of the testator. The original Statute of Wills (32 Hen. VIII, c. 1) giving testamentary power over legal title to lands throughout England, did not apply to realty acquired by the testator after the execution of the will, and consequently the rule was well settled at common law and under the earlier wills acts that a will, in so far as it involved real property, spoke as of the time of its execution and did not operate to pass land subsequently acquired. \* \* \* This rule has been changed by statute in England and in most American states, so as to sweep away completely the distinction between bequests of personalty and devises of real property and make a will speak from the date of the testator's death and convey after-acquired real estate as well as after-acquired personalty, in the absence of any different intention evidenced in the will."

Our Section 14-325, I.C., provides that after-acquired real estate passes under a will the same as personal property and reads as follows: "Any estate, right or interest in lands, acquired by the testator after the making of his will, passes thereby and in like manner as if the title thereto was vested in him at the time of making the will, unless the contrary manifestly appears by the will to have been the intention of the testator. Every will made in express terms devising, or in any other terms denoting the intent of the testator to devise all the real estate of such testator, passes all the real estate which such testator was entitled to devise at the time of his decease."

It thus appears that all after-acquired property would pass under the will of the testator unless a contrary intention clearly appears in the will.

Appellants contend that paragraph 2 of the will, the use of the words "my estate"

therein and of the words "my said estate" in the residuary clause, show that the testator was only attempting to deal with and dispose of his one-half interest in the community property; and that the language used in the will manifests the intention of the testator to restrict his testamentary disposition to one-half the community property.

■■ It may be conceded that at the time the will was drawn, the testator had in mind that his estate consisted, at that time, of only his undivided one-half interest in the property. Ordinarily a testator cannot know at time of executing his will of what his property will consist at time of death. There may be losses or accretions during the interval. The general term "estate" when used in a will, unless otherwise restricted, means all of testator's property left after death. 57 Am.Jur. 886. We fail to find anything in the will in question to indicate that the testator by the use of the term "my estate" in paragraph 2 and "my said estate" in the residuary clause, did not intend to include all his then property plus accretions. The accretion to his estate by his inheritance from the wife, occupies the same status as would an accretion by inheritance from some other person or resulting from a business transaction.

The nominal gifts to eight of the children tend to show an intention to virtually disinherit such children. The residuary bequest practically comprises the entire estate.

There is nothing in the will manifesting an intention on the part of the testator to supersede the common law *rule* that personal property, and the *statute* that real estate, acquired after the execution of the will, passes thereunder.

■■ The residuary clause in the will uses the words, "all the rest, residue and remainder of my said estate." This is a general and not a restricted residuary clause. It is not restricted to the remainder of a particular fund or particular species of property. The question of a lapsed legacy is not here involved. The language is sufficient to pass not only the estate in existence at the time of the execution of the will, but all accretions thereto. We quote from 57 Am.Jur. 947, par. 1415, as follows:

"Debts and legacies having been provided for, however, the operation of a general residuary clause to include, in the absence of any contrary testatorial intention, all species of property owned by the testator at the time of his death and otherwise undisposed of by the will, whether or not the testator was aware of such ownership, is recognized in many decisions.

"A 'general' residuary clause is one which employs some broad term such as 'property' or 'estate' and hence is sufficient to carry all classes and kinds of property, * * *"

A general residuary clause passes all property owned by the testator at the time

of his death not otherwise disposed of by the will unless a contrary intention appears in the will. 57 Am.Jur. 948–949, pars. 1417–1418.

■ In construing a will, the presumption is against partial intestacy. In 57 Am.Jur. 754–756, par. 1158, it is said:

"Where a will has been executed, the reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption of an intention to die intestate as to any part of his estate when the words used by the testator will clearly carry the whole. Therefore, in the construction of doubtful clauses in a will, that interpretation is to be adopted, if possible, which avoids a partial intestacy, unless it clearly appears that the testator intended to die intestate as to part of his property. The generally accepted construction of the word 'estate' as including both realty and personalty, for example, receives strong support from the presumption against partial intestacy. An intestacy is a dernier resort in the construction of wills, and the abhorrence of courts to intestacy under a will has been likened to the abhorrence of nature to a vacuum.

"*The presumption against an intestacy is particularly strong where the subject of the gift is the residuary estate.*" (Emphasis supplied.)

The case of In re Williamson's Estate, 75 Cal. 317, 17 P. 221, cited and relied upon by appellants, is clearly distinguishable. The will in that case shows that the son had helped and was helping to produce the estate, that the daughter had received advancements and that the testator requested his wife to divide her share between the two children, evidencing a desire on the part of the testator to substantially divide the estate. In the opinion, the court also uses this language: "And the intention of the testator that the whole property should not go to the son at the wife's death is shown by his request to the wife: 'I request and desire that my said wife, in case she survives me, by testamentary disposition or otherwise, distribute her portion or half of said community property equally between our said children, Robert Samuel and Caroline, and any others that may be begotten to us.'" The court held in effect that the various terms of the will manifested an intention to limit the general bequest to the son.

In accordance with the foregoing views, the judgment of the trial court is affirmed. Costs awarded to respondents.

HOLDEN, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.